UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY RAY BAKER, JR.                        CIVIL ACTION

VERSUS                                      NO. 10-3226

HELIX ENERGY SOLUTIONS GROUP, INC.          SECTION "B"(4)


## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment to Enforce Pre-Litigation Settlement (Rec. Doc. No. 29). Plaintiff has filed an opposition thereto at Rec. Doc. No. 31. After reviewing the record and applicable law, for the reasons pronounced below,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 29) be **GRANTED IN PART AND DENIED IN PART. GRANTED** to the extent that Plaintiff's claims arising out his initial shoulder injury be **DISMISSED** and **DENIED** to the extent that all claims arising out of Plaintiff's October 11, 2009 shoulder injury be allowed to proceed.

This case arises from injuries allegedly sustained by Plaintiff on July 3, 2009 while employed by defendant as a seaman aboard the Mobile Offshore Drilling Unit ("MODU") Q-4000. (Rec. Doc. Nos. 29-4; 31-13). Plaintiff alleges he suffered shoulder injuries when, while "attached to the vessel's man-riding system by a tugger cable. . . [w]hile elevated on [a] frame . . . the hook of the vessel's 360 crane latched onto the tugger cable and

'physically jerked [plaintiff] upward,' causing him to slam into the coil tubing frame multiple times." (Rec. Doc. Nos. 31 at 2; 31-3 at 1-2). After being medi-vaced to the emergency room and theater released, Plaintiff saw a Dr. O.H. Chitwood who performed an MRI on Plaintiff and oversaw his physical therapy before pronouncing Plaintiff at maximum medical improvement on September 16, 2009. (Rec. Doc. Nos. 29-1 at 3; 31 at 2). Also in attendance at the September 16 meeting between Plaintiff and Dr. Chitwood, were Plaintiff's wife, Shannon Baker as well as Martin Lowe, a claims representative of Defendant's.[1] (Rec. Doc. Nos. 29-1 at 4; 31 at 6).

Directly following the meeting with Dr. Chitwood, in another part of the hospital, Lowe "found some little conference room that no one was sitting in" and met with Plaintiff and his wife. (Rec. Doc. No. 31-4 at 12). It was at this meeting that Plaintiff signed a "General Release and Indemnity Agreement" ("Agreement") found at Rec. Doc. No. 29-3 at 12-18 in exchange for $4,800.00. At issue in the instant motion and opposition is the validity of that Agreement. That meeting was recorded by Lowe, the transcription of which is found at Rec. Doc. No. 31-5.

Thereafter, Plaintiff returned to work for Defendant on October 4, 2009, was assigned lighter duty assisting a welder.

---

[1]Defendant notes that Lowe "is employed by Shuman Consulting Services LP, which acts as a claims administrator for [defendant]." (Rec. Doc. No. 29-1 at 4 n.1).

(Rec. Doc. No. 31 at 4).  On October 11, 2009, after lifting "an approximately 25-35 lb. piece of metal grating", Plaintiff states he felt "severe discomfort in is previously injured left shoulder." *Id*.  Plaintiff was ordered off the rig after reporting said incident to a medic.  *Id*.  After seeing a Dr. Vanderweide on October 13, 2009, Plaintiff underwent arthrosporic surgery on December 1, 2009, performed by a Dr. Champ Baker.[2]  (*See* Rec. Doc. Nos. 29-1 at 3; 31 at 4).

Movant notes that Plaintiff initialed each page of the Agreement and states "[t]he Release Agreement speaks for itself . . . ."  (Rec. Doc. No. 29-1).  Movant further points to those portions of the Agreement stating Releasor's acknowledgment of his right to file suit and waiver of that right.[3]  (Rec. Doc. No. 29-3 at 14).

Lowe read each part of the Agreement to Plaintiff and

---

[2]Accompanying a second pronouncement of maximum medical improvement following this surgery was a twenty five pound lifting restriction from his doctor; plaintiff contends this restriction has permanently impaired his earning capacity.  (Rec. Doc. No. 31 at 4).

[3]This portion of the Agreement, found at Rec. Doc. No. 29-3 at 14, states:

RELEASOR understands and acknowledges that he has a right to consult with legal counsel concerning potential claims against the RELEASEE arising out of the Occurrence, that he has a right to file a lawsuit in Federal or State Court and have his case tired by a judge or jury, and that, if he did so, he may receive an award greater that [sic] the amount being paid herein in settlement . . . . RELEASOR hereby waives his right to trial by jury in any litigation brought by him or his successors in interest with respect to any claim for which release is provided herein and with respect to any dispute arising out of this instrument. RELEASOR acknowledges that he is not under the influence of alcohol or drugs, or any other substance that impedes his ability fo fully understand the terms of this Release.

-3-

Plaintiff states in his deposition testimony that he "followed along" with Lowe as he read. (*See* Rec. Doc. Nos. 29-1 at; at 18).

Movant contends the Agreement is valid and in signing the Agreement, "plaintiff knowingly and voluntarily released all of his claims against defendant and executed a Release document freely, without deception or coercion, with full understanding of his rights." (Rec. Doc. No. 29 at 1-2). As such, Movant argues Plaintiff's claims need be dismissed. *Id.* at 3. Alternatively, Movant requests a plenary hearing on the instant motion should the Court determine summary judgment is here improper. *Id*. Movant also states that Plaintiff has received more money than the $4,800.00 noted in the Agreement, stating that Plaintiff was paid "gratuitous payment benefits" totaling $5,850.00. (Rec. Doc. No. 29-1 at 6 n.1; 13).

Although Respondent argues there exist issues of material fact regarding the validity of the Agreement which need be determined by a jury, Respondent primarily contends the Agreement "is not valid nor prohibitive of Plaintiff's claim". (Rec. Doc. No. 31 at 5-6). Specifically, Respondent contends "the lack of good faith [and] arm's length negotiations is blatantly apparent." (Rec. Doc. No. 31 at 8). Respondent contends Lowe coerced him into signing the Agreement; although Plaintiff admits he "did sign the release papers in exchange for $4,800", he contends that Movant bears the burden of proving "[Plaintiff] was in no way taken advantage of

-4-

when he was induced to sign away his legal rights for a mere $4,800." (Rec. Doc. No. 31 at 3, 7).

A.  <u>Summary Judgment Standard</u>

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

-5-

B.   Seaman's Release or Settlement

"Seamen, of course, are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (citing *Karim v. Finch Shipping Co.*, 374 F.3d 302, 310 (5th Cir.2004)). "As a result of the policy that favors protecting the rights of seamen, the Supreme Court has emphasized that a seaman's release or settlement of his rights must be carefully scrutinized." *Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 244 (5th Cir. 1991) (citing *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248, (1942); *Wink v. Rowan Drilling Co.*, 611 F.2d 98, 100 (5th Cir. 1980)). The Fifth Circuit has stated that "[t]he ultimate concern in these cases, however, is not whether the seaman has received what the court believes to be adequate consideration, but rather whether the seaman relinquished his rights with an informed understanding of his rights and a full appreciation of the consequences when he executed a release." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942) (cited in *Steverson*, 508 F.3d at 204) (citation omitted)).

> Factors relevant to an appraisal of a seaman's understanding of his rights include [1] the nature of the legal advice available to the seaman at the time of signing the release, [2] the adequacy of the consideration, [3] whether the parties negotiated at arm's length and in good faith, and [4] whether there was the appearance of fraud or coercion.

*Simpson v. Lykes Bros. Inc.*, 22 F.3d 601, 602 (5th Cir. 1994)

-6-

(citing *Borne v. A & P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256-57 (5th Cir. 1986)).[4]  "The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding."[5]  *Garrett*, 317 U.S. at 248.

Considering all of these factors and taking the into account the entire factual scenario it appears that Baker received and signed the Agreement with full knowledge of his rights and a full appreciation of the consequences of executing the Agreement as it relates to his initial injury.

In *Miles v. American Seafoods Co.*, 197 F.3d 1032 (9th Cir. 1999), a seaman sued a vessel owner seeking maintenance and cure arising out of an injury to his right shoulder.  Plaintiff had inured his right shoulder in 1995 while working aboard a vessel and, in 1996 signed a release agreement and returned to work for defendant without restrictions.  *Id*. at 1033.  In May, 1997 Plaintiff entered another work contract and thereafter injured the same shoulder again which caused him to cease work for treatment; for that second injury, he sought maintenance and cure.  *Id*. at

---

[4]Although Movant cites *Simpson* in the instant motion, the underlying facts of that case are, at least in part, distinguishable from the case *sub judice* as there, the seaman and his family "acknowledged that they had been advised by counsel and that they understood the advice."  22 F.3d at 602.

[5]*See also Davis v. American Commercial Lines, Inc.*, 823 F.2d 1006, 1007 (6th Cir 1987).  "[T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights."  *Id*.

1033-34.

On appeal, the court reversed the district court's grant of summary judgment in favor of defendant. *Id.* at 1034. Defendant did not dispute that "something new happened in 1997 but argue[d] that it resulted in a 're-injury of [Plaintiff's] 1995 right shoulder injury." *Id.*

> But the release does not protect defendant from liability for a future injury of the same part of Miles' body caused by a subsequent event. Suppose [Plaintiff] had fractured his arm, signed the release, and on a later voyage fractured that same arm; surely no one would argue that the release on account of the first fracture discharges liability for future identical fractures. . .
>
> [The Agreement] does not protect against a claim arising out of a new trauma from sorting fish on the AMERICAN DYNASTY resulting in another injury to the same shoulder, even if that injury aggravates an earlier injury.

*Id*. Here, section I(C) of the Agreement defines "The Occurrence" as follows:

> The RELEASOR reported receiving a left shoulder injury on the Q4000 on 3 July 2009. Any other incident causing bodily injury and/or personal injury or psychological injury of any nature to the RELEASOR during the course of his employment with RELEASEES, or his service aboard the Q4000 or his service aboard any other vessel owned or operated by the RELEASEES *prior to the date of this agreement*.

Rec. Doc. No. 29-3 at 1 (emphasis added). Thus, the release does not preclude claims arising out of the October 11, 2009 injury allegedly sustained by Plaintiff to his left shoulder during a lifting incident, separate and apart from the initial July 2009

-8-

crane incident.     Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 29) be **GRANTED IN PART AND DENIED IN PART; GRANTED** to the extent that Plaintiff's claims arising out the initial shoulder injury on July 3,2009 are **DISMISSED,** and **DENIED** to the extent that all claims arising out of the subsequent incident on October 11, 2009, causing or aggravating a shoulder injury, shall remain.

New Orleans, Louisiana, this 12th day of September, 2011.

UNITED STATES DISTRICT JUDGE